**CHILEAN NITRATE SALES CORP.,**
Libelant,

v.

**THE NORTUNA, her engines, etc., John Aage Wilson and Oceanwide Steamship Company, Inc., Respondents.**

United States District Court,
S. D. New York.

Feb. 17, 1955.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelant, Arthur O. Louis, J. Edwin Carey, New York City, of counsel.

McNutt & Nash, New York City, for respondent, Oceanwide S. S. Co., Inc., Thorolv T. Waaland, New York City, of counsel.

DAWSON, District Judge.

The issue in this case is whether an arbitration clause contained in a charter party between the ship owner and the shipper of merchandise is binding upon the consignee of the merchandise under the particular facts of this case and requires that a claim for damages for injury to the cargo be arbitrated.

The issue arises because respondent, Oceanwide Steamship Company, Inc., has moved to stay all proceedings pending an arbitration. Since the facts did

not appear clearly from the papers submitted on the motion, I directed, by a memorandum dated December 9, 1954, that a hearing be held. This hearing was held and testimony taken on January 19, 1955.

The following facts appear without substantial dispute:

1. On April 20, 1951, John Aage Wilson, as disponent owner of the S. S. Nortuna, chartered her by a long term charter to Chilean Nitrate & Iodine Sales Corp., a Chilean corporation. The charter party contained a provision for the determination by arbitration of any dispute that might arise "between owners and the charterers".

2. By an addendum to the charter party dated May 21, 1952, it was agreed that effective that date, the owner of the ship was Oceanwide Steamship Company, Inc., the respondent herein. This addendum to the charter party constitutes a novation, and with respect to the rights and liabilities under the charter party, Oceanwide Steamship Company, Inc. must be regarded as the owner of the S. S. Nortuna.

3. On or about April 21, 1953, Chilean Nitrate & Iodine Sales Corp., the Chilean corporation, shipped a bulk cargo of sodium nitrate to the United States. The bill of lading which was issued on the shipment showed the Chilean corporation as the shipper and the Guaranty Trust Company of New York as consignee. The bill of lading contained a clause stating that—

"Insofar as applicable all other conditions and exceptions to be as per time charter dated New York, April 20th of 1951, between * *"

4. The amended libel alleges that the libelant was the "shipper, consignee, or owner of the shipment" and states that it "brings this action on its own behalf and, as agent and trustee, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear."

5. Libelant, a New York corporation, is a wholly-owned subsidiary of Chilean Nitrate & Iodine Sales Corp., the Chilean corporation. The testimony before me shows that in fact the New York corporation, acting as agent for the Chilean corporation, had hired the S. S. Nortuna, paid the hire, and signed the charter party as such agent. The Treasurer of the New York corporation testified that the charter party had not been submitted to the Chilean corporation for approval, and that it had been signed as a matter of routine as agent for the Chilean corporation. The Treasurer further testified that the New York corporation was familiar with the terms of the charter party and during the life of the charter party it had issued instructions to the Master of the vessel. The testimony further shows that on July 10, 1953, the New York corporation presented to the agents of the respondent owners a "Claim for Loss and Damage of Bulk Nitrate ex-vessels"; that included in the loss computations of this claim were not only amounts for damage to the nitrate cargo covered by the bill of lading that is the basis of this action, but also certain "Off-Hire" credits that could accrue only to the charterer. The testimony further shows that sales of nitrates are made by the Chilean corporation to its New York subsidiary pursuant to a purchase contract negotiated annually. No sales slips are rendered with the sales, nor are the accounts due and payable within a specified time. The New York corporation sells the nitrate. The accounts between the two companies are reconciled on the books of the corporations as an inter-company accounting procedure with the New York corporation running merely an open account on its books with the Chilean corporation. The testimony further shows that the New York subsidiary maintained a sizeable Marine Traffic Department which issued comprehensive instructions as to the care and handling of nitrate cargoes to the Masters of vessels which had been time chartered by the Chilean corporation.

**940**

Libelant, the New York corporation, has brought this action for damages to the cargo. Respondent has moved for an order granting a stay of the trial and of all proceedings herein until arbitration is had.

The issue is whether libelant is bound by the arbitration provision contained in the charter party. Libelant contends that it is a separate corporate entity and that it is not bound by the arbitration provision in a charter between its parent and the owner of the vessel. The arbitration provision, by its terms, is limited to controversies that might arise between the owner and the charterer, i. e., between the owner of the ship and the Chilean corporation. Is the present controversy one between the owner of the ship and the Chilean corporation? Is the fact that the New York subsidiary of the Chilean corporation has brought the action sufficient to establish that the Chilean corporation is not the real party in interest to the dispute?

It will be noted, in the first place, that the amended libel alleges that libelant was the shipper, consignee, or owner of the cargo. But, on the other hand, the bill of lading shows that the shipper was not the New York corporation but was the Chilean corporation. The consignee named in the bill of lading was the Guaranty Trust Company of New York. The testimony shows that the shipment was made to the New York corporation as a sales agent for the Chilean corporation and that no sales slips are rendered on shipments to the New York corporation, nor is payment therefor to be made within a specified time.

The amended libel alleges on its face that the action is brought by libelant "as agent and trustee, and on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear." Under the intercompany accounting system between the New York and Chilean corporations, the Chilean corporation has an interest in the recovery which is real and direct. It was listed in the bill of lading as the shipper of the cargo. The New York corporation was receiving the cargo as a sales agent for the Chilean corporation. Any recovery in this action would be a recovery by an agent and in reality would inure to the benefit of the principal. The very allegations of the libel would so indicate. Under the facts of this case, it must be concluded that the action relates to a controversy which is subject to the arbitration clause.

■ It is true that where a bill of lading has been transferred for value to a third party not a party to the charter party, it constitutes an undertaking independent of the charter party, except as to provisions of the charter party expressly incorporated into it. See Son Shipping Co., Inc. v. De Fosse & Tanghe, 2 Cir., 1953, 199 F.2d 687. The reason for the rule is that third persons are strangers to the charter party, and as a good deal of the international trade of the world is done on the faith of bills of lading, it is essential that purchasers of goods be enabled to rely on clean bills of lading free from the restraint of agreements between the ship owner and charterer, as to which they have no notice. See The Ferncliff, D.C.Md.1938, 22 F. Supp. 728, at pages 737, 738, affirmed, Smith v. The Ferncliff, 4 Cir., 1938, 105 F.2d 1021; Id., 306 U.S. 444, 59 S.Ct. 615, 83 L.Ed. 862; Carver's Carriage of Goods by Sea, 9th Ed., p. 284.

However, the record shows clearly that the New York corporation was not a stranger to the charter party. It signed the charter party as attorney for the Chilean corporation. It approved the provisions of the charter party for the Chilean corporation. It issued instructions to the Master of the vessel. It attempted to negotiate a settlement of the instant claim, not only with respect to the cargo, but also with respect to hire payments, which rights clearly belonged to the charterer, the Chilean corporation. It engaged in correspondence with the agent of the ship owner in which it referred to the Chilean corporation as its "associate". Any profit made on the

sale of the cargo would inure to the benefit of the Chilean corporation.

■ Ordinarily, corporations are to be regarded as separate entities even though another corporation owns all of their stock. However, as Cardozo, J., said, in speaking of the relationship between parent and subsidiary, in Berkey v. Third Ave. R. Co., 1926, 244 N.Y. 84, at page 95, 155 N.E. 58, at page 61, 50 A.L.R. 599:

> "Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent."

■ Where this is so, the fiction of separate identity will not be continued and if the record shows that one corporation is no more than the mere instrumentality of another, courts will look through the form of the relationship to reach the substance and treat the situation as justice warrants. Hollander v. Henry, 2 Cir., 1951, 186 F.2d 582, certiorari denied, 1951, 341 U.S. 949, 71 S.Ct. 1017, 95 L.Ed. 1373; Bourjois, Inc. v. McGowan, D.C.W.D.N.Y.1935, 12 F. Supp. 787, at page 791, affirmed 2 Cir., 1936, 85 F.2d 510, certiorari denied 300 U.S. 682, 57 S.Ct. 753, 81 L.Ed. 885; Chicago, Milwaukee & St. Paul R. Co. v. Minneapolis Civic & Commerce Association, 1917, 247 U.S. 490, at page 501, 38 S.Ct. 553, at page 557, 62 L.Ed. 1229.

■ Both from the pleading and the facts, it appears that the controversy is one which is governed by the arbitration provision in the charter party, and I so hold.

One further question remains. In my memorandum dated December 9, 1954, I stated that on the record before me, it appeared that John Aage Wilson, who signed the charter party as disponent owner, was the agent of the owner and gave libelant an opportunity to present any facts indicating to the contrary. Nothing further having been adduced, I so hold. O/Y Wassa S. S. Co., Ltd. and Another v. Newspaper Pulp & Wood Export, Ltd., 82 Lloyd's List Law Reports 936 (K.B.Div.1949).

The motion for a stay is granted. The motion to direct respondent to answer certain interrogatories is denied. Settle order on two days' notice.