**LOWRY & CO., Inc., Libellant,**

v.

**S.S. NADIR, her engines, boilers, etc.**

v.

**Faik ZEREN, Claimant-Respondent.**

United States District Court
S. D. New York.
Nov. 18, 1963.

Bigham, Englar, Jones & Houston, New York City, for libellant, John W. R. Zisgen, New York City, of counsel.

Lester M. Levin, New York City, for respondent.

COOPER, District Judge.

This is a motion, pursuant to 9 U.S.C. § 3, for an order staying libellant from proceeding in this action until the outcome of an arbitration of its claims in Hamburg, Germany.

Respondent's claim for arbitration of this dispute arises from a charter party agreement between respondent Faik Zeren and August Topfer & Co. ("Topfer"), the German charterer. The latter is not a party to the instant action.

The charter party dated September 19, 1962, provided for a Turkish flag vessel to carry sugar from Turkey to the United

States. The cargo was delivered to the S.S. Nadir in Turkey by Topfer, who received two bills of lading covering the cargo from the respondent.

By written contract, dated August 17, 1962, Topfer sold the cargo to libellant, who received a copy of the charter party on November 2, 1962 and the bills of lading on November 8, 1962. The bills were "charter party" bills of lading, and were endorsed in blank by Topfer. The sugar had already been paid for by libellant pursuant to advice from Topfer received on November 6, 1962, that the documents specified in the sales contract (invoices, bills of lading and insurance certificates) were ready for delivery.

The shipment of sugar was found to be seriously damaged by rat excreta upon discharge at Baltimore, Maryland and New York, New York.

The libel involved here claims $300,000.00 damages and was filed on February 19, 1963. The respondent vessel was subsequently attached and was discharged from attachment on April 2, 1963.

The charter party between Topfer and respondent contains this arbitration clause:

"32) *Arbitration to be settled in Hamburg as follows:* All disputes arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final Arbitrament of two Arbitrators carrying on business in Germany, who be engaged in the shipping and/or import trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. If defendant should not nominate an Arbitrator within one month after having been requested to do so, same will be nominated by the Chamber of Commerce in Hamburg. If no agreement can be reached by such two Arbitrators regarding the Umpire, the latter will also be nominated by the Chamber of Commerce in Hamburg. The decision by such Arbitrators to be final. Any claim must be made

in writing and claiments Arbitrator appointed within six months of final discharge and where this provision is not complied with, the claim shall be deemed to be waived and absolutely barred.

"No award shall be questioned or invalidated on the ground of any of the Arbitrators not being qualified as above, unless objection to his acting be taken before the award is made. Arbitration to be made up in Hamburg in accordance with German Law."

The two bills of lading issued to Topfer, and now held by libellant, were "charter party" bills; that is, they were meant for use with charter parties. The bills of lading further provide "all of the terms, conditions, liberties and exceptions of the Charter Party are herewith incorporated." The charter party referred to is indicated in the freight payment clause, providing that freight shall be paid "as per Charter-Party, dated 19–9–62."

Respondents contend that by virtue of the clause in the bills of lading incorporating the terms of the charter party, the libellants, as holders of the bills, are bound by the arbitration clause in the charter party, and must therefore, arbitrate this claim in accordance with that clause.

Libellant contends that, as a stranger to the charter party, the incorporation clause of the bills of lading is insufficient to bind it to arbitrate this dispute. The charter party provision, it is claimed, does not purport to require arbitration of any claims other than those between Topfer, the charterer, and respondent, Faik Zeren, the owner.

The court cannot agree either with libellant's interpretation of the documents here in issue or with libellant's reading of the applicable cases.

The leading case on this subject is Son Shipping Co., Inc. v. DeFosse & Tanghe, 199 F.2d 687 (2d Cir. 1952). The facts there are quite similar to those at bar. The litigants in Son were the

ship owner and the charterer, the latter being joined by the ultimate consignee in demanding arbitration of the claim.

In the Son case, as in the case at bar, there was a charter party between the charterer and the ship owner containing an agreement to arbitrate all disputes. The bills of lading, which were held by the Palestine Electric Corp., contained a clause incorporating all the terms of the charter party. The court stated, at p. 688 of 199 F.2d:

"Where terms of the charter party are, as here, expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner."

Libellants contend that the position of Palestine Electric Corp., the bill of lading holder in the Son case, was not presented with sufficient force or clarity to enable the Circuit Court to determine the applicability of the charter party arbitration clause to the ultimate consignee of the cargo. It is contended that the controversy involved in Son was between the shipowner and the charterer.

With this the Court disagrees. Not only does the order of the court clearly bind Palestine Electric Corp. to the decision rendered, but the language quoted, *supra,* could be directed to none other than the ultimate consignee of the cargo. Further, if the Son case represented merely a dispute between the charterer and the shipowner, there would be no need to sue on the bill of lading. Clearly, both parties would be bound by the terms of the charter party. Suffice it to say that the charterer in the Son case (DeFosse and Tanghe) made the demand for arbitration on behalf of Palestine Electric Corp. A careful reading of the case indicates that the charterer was a mere nominal party to the action.

Both parties here rely on certain language found in Chilean Nitrate Sales Corp. v. The Nortuna, 128 F.Supp. 938 (S.D.N.Y.1955) to support their respective arguments. A close reading of that decision, however, leads us to the conclusion that the facts of that case are quite distinguishable. There, the arbitration clause provided for arbitration of all disputes "between Owner and Charterer." In the case at bar, the arbitration clause does not mention "owner or charterer" but rather speaks in terms of "parties" and "defendant." Although the court cites Son with approval, the issue in the Nortuna case was whether the bill of lading holder was a subsidiary of the charterer, and therefore bound by the charter party. The incorporation of the charter party clauses into the bill of lading was not in issue.

There has been some space devoted by the parties in their papers to a discussion of the relationship between libellant and August Topfer & Co., the charterer. From the papers submitted upon this motion, the court is satisfied that there was not that degree of inter-company consanguinity which was found to be controlling in the Nortuna case.

Libellant refers this court to the English case of The Elizabeth H, 1 Lloyd's List Law Reports 172 (1962), where the court refused to stay the proceeding pending arbitration. In that case, as in Chilean Nitrate Sales Corp. v. The Nortuna (supra), the arbitration clause specifically mentioned the "owner" and the "charterer." In distinguishing the Son case, the court ruled at p. 178:

"The wording of the arbitration clause in the charter-party which was specifically drawn to the attention of the Circuit Court did not, as I have said, include 'consisting of one arbitrator to be appointed by the owner and the other one by the charterer',"

The implication advanced is that if these words had been called to the attention of the court, the Son case might have been decided differently.

This distinction, implicit in Chilean Nitrate Sales Corp. v. The Nortuna and explicit in The Elizabeth H, is quite significant. Where the words "owner" and "charterer" are used in the

arbitration clause, it is indeed difficult to bind to that clause one who is not a signatory to the charter party. Where, however, the words used indicate that others, not parties to the charter party, might be compelled to arbitrate their claims, an opposite result comes more readily. In the instant case, the words "parties" and "defendant" are used in the arbitration clause. While we do not think that this distinction is determinative in every case, (See, e. g., Son Shipping Co. Inc. v. DeFosse & Tanghe, supra) it is, at least, an indication of the applicability of the terms of the charter party arbitration clause to the ultimate consignee of the cargo.

■ The Elizabeth H, moreover, is not highly persuasive, in light of the relatively unfavorable attitude toward arbitration held by the English courts. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942).

Another distinction worth noting was recognized by this court in United States v. Cia. Naviera Continental S.A., 202 F. Supp. 698 (S.D.N.Y.1962) and Southwestern Sugar & Molasses Company v. The Eliza Jane Nicholson, 126 F.Supp. 666 (S.D.N.Y.1954). In those cases, the court refused to compel the bill of lading holder to arbitrate its claims, pursuant to the arbitration clause in the charter party. The court found that the bills of lading, although attempting to incorporate the terms of the charter party, failed to identify the charter party with sufficient clarity. The blanks on the face of the bill of lading which referred to the charter party were left open. The court felt it unfair to bind the holders of the bills of lading to clauses contained in a charter party so unsatisfactorily identified. In the case before us, both bills of lading clearly identify the charter party under which the cargo was shipped by referring to it specifically by date.

In addition, the purchase contract between libellant and the charterer, August Topfer & Co., provided that charter party bills of lading were to be accepted and that any disputes between them were to be settled by arbitration in Hamburg, Germany. Surely these facts, *in toto,* negate any claim of surprise or unfairness raised by libellant.

The case of Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), relied upon heavily by libellant, is inapposite to the case at bar. There, the court was interpreting the Securities Act of 1933. In striking down an arbitration clause in a margin agreement, the court said at p. 438 of 346 U.S., at p. 188 of 74 S.Ct., 98 L.Ed. 168:

> "Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the [Securities] Act."

It seems clear that the Supreme Court was interested in protecting the unique remedy given to the investor by the Act and in keeping inviolate the right to pursue that remedy in a court of law. We do not think that the excellent reasoning of Wilko v. Swan can be applied to a suit in admiralty by extending its interpretation of the Securities Act of 1933 to the Carriage of Goods by Sea Act.

■ The enforceability of the arbitration clause in Germany has been put in issue here. Both parties have gone to great lengths to provide this court with opinions from German courts and German counsel. Suffice it to say, this court, while it cannot predict what a German court will rule in this situation, considers it likely that the arbitration clause will be found enforceable under the applicable German law. See affidavit of Dr. jur Ernst Heinsen and his translation of Versicherungsrecht Vol. 1960 pp. 307, 308 attached to the moving papers.

Accordingly, libellant is stayed from proceeding in this action pending arbitration of the claims here presented.

Settle order on five (5) days notice.