In the Matter of Arbitration between IM-PORT EXPORT STEEL CORPORA-TION and Nimpex International, Inc., Petitioners-Appellees,

v.

MISSISSIPPI VALLEY BARGE LINE COMPANY, Respondent-Appellant.

No. 476, Docket 29616.

United States Court of Appeals
Second Circuit.

Argued May 5, 1965.

Decided July 29, 1965.

Rehearings Denied Oct. 26, 1965.

Joseph T. McGowan, New York City (Clare E. Walker and Hill, Rivkins, Louis & Warburton, New York City, on the brief), for petitioners-appellees.

William Warner, New York City (Symmers, Fish & Warner, New York City, on the brief), for respondent-appellant.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This appeal raises the question whether a subcharterer, appellant Mississippi Valley Barge Line, Inc. (Mississippi), is bound by the arbitration clause of a voyage charter party and an addendum thereto, entered into by its agent, Bulk Carriers, Ltd. (Bulk), the "disponent owner" of the vessel, and Nimpex International, Inc. (Nimpex) and incorporated in the bills of lading issued for the char-ter cargo, in arbitration proceedings in-stituted by Nimpex and Import Export Steel Corporation (Impex), an affiliate of Nimpex and the notify party on the bills of lading. The District Court, Thomas F. Croake, D. J., granted the petition for arbitration finding that Mis-sissippi had assumed the obligations of Bulk under the charter party, including the obligation to arbitrate. We affirm in part and reverse in part, holding that Mississippi is bound to arbitrate with Nimpex but not with Impex.

The owner of the freighter S.S. Dori, through its agent Venizelos, S.A., voyage chartered the vessel on October 23, 1963 to Bulk which, in turn, on the same day entered into a subcharter agreement with Nimpex for the carriage of approximate-ly 9,800 long tons of steel coils from Bremen or Emden, Germany to New Or-leans, Louisiana. The subcharter provid-ed that "should any dispute arise between the Owners and the Charterers, the mat-ter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen * * *." The following month Mississippi appoint-ed Bulk as its "overseas Agents" for the primary purpose of soliciting overseas cargo for carriage on inland rivers served by Mississippi barges, and Mississippi also advised Bulk that it was prepared to issue through Bulk "Through Bills of Lading" from point of origin overseas through to the destination on waterways traveled by Mississippi.

On December 13, 1963 the subcharter agreement was amended to provide that the disponent owner (Bulk) would issue to the charterer (Nimpex), upon comple-tion of the loading of the cargo at the German ports, a through bill of lading in the name of Mississippi and that the disponent owner would deliver the cargo to Chicago, Illinois after transshipment from the Dori at New Orleans and car-riage on a Mississippi barge. Mississip-pi and Bulk entered into a memorandum of agreement that same day, according to the date appearing on the document, wherein the Dori charter party, dated

October 23 and December 13, 1963 was sublet by Bulk to Mississippi, and Mississippi assumed all the obligations and privileges of Bulk under the subcharter and addendum in exchange for Bulk's issuing through bills of lading covering the carriage by sea, transshipment and onward carriage by barge. The addendum to the subcharter contained an arbitration clause which provided as follows:

"Should any dispute arise between the Disponent Owners and the Charterers, the matter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, and their decision, or that of any two of them, shall be final, and, for purpose, of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be commercial men."

The cargo of steel coils was loaded at Bremen on December 27 and at Emden on December 31, and the Dori's master issued a total of fifteen bills of lading covering the carriage of the shipment to New Orleans. Each bill of lading designated Schulte & Bruns of Bremen, agent for the cargo interests and Bulk, as the shipper and Impex as the notify party and incorporated in form language "All the terms, conditions, liberties and exceptions of the Charter Party * *." Schulte & Bruns accepted them and later endorsed them in blank.

The Dori departed from Germany in January proceeding for its destination at New Orleans which it never reached; the vessel foundered on January 16 in waters off the Azores. On January 23, Bulk, as agent for Mississippi, delivered bills of lading to Nimpex, superseding the earlier bills of lading, for carriage of the steel coils to St. Louis, Missouri. The new bills, dated December 27 and 31, 1963, bore the following provision which had been inserted by Bulk: "All the terms, conditions, liberties and exceptions of the charter party dated 23.10.63 and addendum thereto dated 13.12.63 are herewith incorporated * * *." Final-

ly, in a letter dated May 26, 1964, Nimpex and Impex made demand on Mississippi to arbitrate the subject of dispute, namely liability for the cargo loss. Upon Mississippi's rejection of the demand, Nimpex and Impex jointly commenced this suit to compel arbitration.

Nimpex and Impex each occupy a different place in the factual labyrinth and their respective rights to enforce the arbitration clause differ accordingly. Impex, we hold, cannot compel Mississippi to arbitrate the dispute. Mississippi assumed the obligations of Bulk only insofar as they were encompassed in the terms of the charter party, and Impex is not a party to that charter party. Impex' standing to compel Mississippi to arbitrate, if it has such standing, must therefore be based on the bills of lading. The bills of lading do not support such a standing. Impex is not a holder of or shipper or consignee under the bills of lading, where its name appears only as notify party.

A non-party libelant such as Impex who is not a holder of or shipper or consignee under the bills of lading cannot utilize the arbitration provisions of the charter party even though those terms are incorporated in the bills of lading. Mississippi, in assuming Bulk's obligations under the charter party and by issuing through its agent Bulk bills of lading which incorporated the provisions of the charter party, consented to be bound by the charter party terms only with respect to those persons who were themselves parties to the charter party or who were holders of the bills of lading or were designated on the bills of lading as principals, such as shippers or consignees.

Furthermore, the language of the arbitration clause incorporated in the bills of lading is restrictive in scope in that it is limited to disputes "between the Disponent Owners and the Charterers." It is narrower than the corresponding provision in Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2 Cir. 1952), which referred to arbitration

"Any and all differences and disputes of whatsoever nature arising out of this charter * * *." Since the bill of lading is the only document which regulates the relations of transferees of the bill of lading with the owner, its terms, including those incorporated therein, should be carefully if not restrictively construed. See Gilmore and Black, Law of Admiralty, at 194 (1957). It would be unduly stretching the language of this arbitration clause to say that Impex, a mere notify party, or even owner of the cargo as it claims to be, is one of the "Disponent Owners" or "Charterers." While this may be of little practical significance here, since the cargo owners' insurance carrier will undoubtedly be the ultimate beneficiary of any success by Nimpex in the arbitration, we cannot add parties to those with whom Mississippi has agreed to arbitrate.

 Nimpex, on the other hand, can compel Mississippi to submit to arbitration since Mississippi by written agreement assumed all the obligations and privileges of Bulk under the Nimpex subcharter to which Bulk was a party and additionally because Nimpex is the holder of bills of lading which were issued by Bulk as agent for Mississippi and which effectively incorporated the arbitration provisions of the subcharter. A party to a charter party may enforce the arbitration provision against another party provided that the issue in dispute falls within the terms of the arbitration clause. In re Canadian Gulf Line, Ltd., 98 F.2d 711 (2 Cir. 1938). And the rule in this circuit is that a holder of a bill of lading which specifically refers to a charter party and in unmistakable language incorporates the charter party's arbitration section can compel a party to the charter party to arbitrate a dispute which comes within the scope of the arbitration provision. Son Shipping Co. v. De Fosse & Tanghe, supra. See also, The Silverbrook, 18 F.2d 144 (E.D.La. 1927). The bills of lading in this case, i. e. the bills of lading which Bulk issued as agent for Mississippi and which superseded the original bills of lading issued by the Dori's master, specifically identified the charter party and the addendum thereto and unequivocally incorporated the provisions of both. Furthermore, the addendum's arbitration clause made arbitrable all disputes that might arise between the disponent owners and the charterers. Nimpex, of course, qualifies as a charterer, and Mississippi by express agreement assumed all the obligations and privileges of Bulk, a disponent owner. Compare United States v. Cia. Naviera Continental, S. A., 202 F.Supp. 698 (S.D.N.Y.1962) (Incorporation clause of bill of lading form which was left blank did not constitute incorporation of the charter party provisions); Industria E. Comercio De Minerios, S. A. v. Nova Genuesis Societa Per Azioni Per L'Industria Et Il Commercio Maritimo, 172 F.Supp. 569 (E.D.Va.1959), aff'd 310 F.2d 811 (4 Cir. 1962) (Same); Southwestern Sugar & Molasses Co. v. The Eliza Jane Nicholson, 126 F.Supp. 666 (S.D.N.Y.1954) (Same). Cf. Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440 (2 Cir. 1964). For parallel results in the converse situation where the party to the charter party agreement is attempting to compel a non-party to submit to arbitration, see Instituto Cubano De Establizacion Del Azucar v. T/V Golden West, 246 F.2d 802 (2 Cir.), cert. den. 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1952); Lowry & Co. v. S.S. Nadir, 223 F.Supp. 871 (S.D.N.Y.1963); Cia. Naviera Somelga v. M. Golodetz & Co., 189 F.Supp. 90 (D.Md.1960); Taiwan Navigation Co. v. Seven Seas Merchant Corp., 172 F. Supp. 721 (S.D.N.Y.1959).

That part of the District Court order requiring Mississippi to arbitrate the dispute over liability with Nimpex is accordingly affirmed; that part ordering Mississippi to arbitrate with Impex is reversed.