**In the Matter of the Arbitration Between CONTINENTAL U.K. LIMITED, Petitioner,**

**and**

**ANAGEL CONFIDENCE COMPANIA NAVIERA, S.A., Respondent.**

**No. 86 Civ. 3522 (CHT).**

United States District Court, S.D. New York.

April 27, 1987.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for petitioner; George F. Chandler, III, of counsel.

Poles, Tublin, Patestides & Stratakis, New York City, for respondent; John J. Devine, Jr., of counsel.

---

TENNEY, District Judge.

Continental U.K. Limited ("petitioner") has filed a motion with this Court to compel arbitration of its claim for seawater damage to a cargo of soy beans carried on the M/V COMMON VENTURE ("the ship") in a journey from Chicago to England. Petitioner is the cargo owner and holder of the bill of lading issued when the soybeans were loaded on the ship. Anagel Confidence Compania Naviera, S.A. ("respondent") owns the ship and originally time-chartered it to Fednav Ltd. ("Fednav"), who in turn, entered into a voyage charter party ("the subcharter") with Stellar Chartering and Brokerage, Inc. ("Stellar"). Both Stellar and petitioner are subsidiaries of the Continental Grain Co. ("Continental Grain"), the entity which sold the soybeans to petitioner, and Stellar entered into the subcharter for petitioner's account.

Petitioner moves for an order pursuant to 9 U.S.C. § 4 (1970)[1] directing respondent to arbitrate this dispute in New York City, and appointing an arbitrator on respondent's behalf.[2] Respondent opposes arbitration in New York City, but has agreed to arbitrate with petitioner in London. For the reasons discussed below, the Court denies petitioner's motion to compel arbitration in New York City.

## BACKGROUND

The facts before the Court are principally undisputed. Respondent time-chartered the ship to Fednav in October, 1985. The time-charter was prepared on the New York Produce Exchange ("NYPE") form. Although the printed language of the form calls for arbitration in New York, a handwritten change provided for arbitration of disputes between Respondent and Fednav in London rather than New York. The time-charter further provided that the Captain of the ship was to sign, or if requested

by Fednav, to authorize them or their agents to sign, bills of lading for cargo as presented. Respondent's Affidavit in Opposition, Exhibit A.

On December 3, 1985, Fednav, as disponent owner of the ship, entered into the subcharter with Stellar, which provided for the carriage of 17,500 metric tons of soybeans from Chicago, Illinois to Seaforth, England. Clause 27 incorporated the NYPE arbitration clause into the subcharter. That arbitration clause (sometimes hereinafter referred to as "the subcharter's arbitration clause") states:

> Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to Three (3) persons at New York, One to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

Petition to Compel Arbitration ("Petition"), Exhibit 1.

The subcharter did not disclose who Stellar had booked the vessel for, or whether Stellar was acting as an agent. However, a document dated December 3, 1985, confirmed that the ship had been booked for "CONTI LONDON," a designation for petitioner. Id., Exhibit 2.

On December 10, 1985, the master of the ship signed a document authorizing Fedmar International ("Fedmar"), agent for Fednav, to sign and release bills of lading on the master's behalf "in accordance with terms, conditions and exceptions of [the subcharter]." Id., Exhibit 3.

On December 13, 1985, after the soybeans had been loaded on board the ship, representatives of Fedmar and Continental Grain signed a statement of facts about the

1. "The [F]ederal Arbitration Act, 43 Stat. 883, 9 U.S.C. § 1 et seq., provides for specific enforcement of agreements to arbitrate in 'maritime' transactions." Ministry of Commerce v. Marine Tankers Corp., 194 F.Supp. 161, 161 n. 1 (S.D.N.Y.1960). This dispute arises out of a charter party, and thus is included within the statutory

definition of "maritime transactions." 9 U.S.C. § 1 (1970).

2. Upon application of either party to a controversy covered by the Federal Arbitration Act, the Court is empowered to appoint an arbitrator pursuant to 9 U.S.C. § 5 (1970).

shipment. The statement of facts declared that "all Terms, Conditions, Clauses and Exceptions of the [subcharter] dated December 3, 1985 at Greenwich including arbitration clause are incorporated herein." Petitioner's Reply Affidavit, Exhibit 9. At that time, a representative of Fedmar also signed and released bills of lading covering the cargo. He utilized a printed form which was imprinted with Continental Grain's name as shipper. Petitioner was listed as the "notify" party. Petition, Exhibit 4.

In several typewritten insertions to the various clauses of the bill of lading, the subcharter was incorporated by reference in the simple words "as per charter party." Also, the bill of lading contained a catch-all printed clause stating "[a]ll terms, conditions and exceptions as per charter party dated [blank] and any addenda thereto to be considered as incorporated herein as if fully written, anything to the contrary contained in this bill of lading notwithstanding." Inserted into the blank was a typewritten reference to the date and location [3] of the subcharter, with an express notation that the incorporation "includ[ed the] arbitration clause". Thus, the complete incorporation clause reads: "[a]ll terms, conditions and exceptions as per charter party dated December 3, 1985 at New York, N.Y. including arbitration clause incorporated herein and any addenda thereto to be considered as incorporated herein as if fully written, anything to the contrary contained in this bill of lading notwithstanding." [4] The signature block reads as follows: "FEDMAR INTERNATIONAL AS AGENTS, ... BY AUTHORITY OF THE MASTER, AS AGENTS ONLY."

The bills of lading were delivered to Continental Grain, which transmitted them to petitioner on December 17, 1985, together with a contract evidencing the sale of the soybeans. Petitioner's Reply Affidavit, Exhibit 8.

When the ship arrived in England, a portion of the soybeans had been damaged by seawater. An inspection of the vessel apparently revealed six hairline stress fractures in the tanks above the holds, and several uncovered bilge wells through which water could enter the cargo space. Petitioner rejected the soybeans, which were then sold to mitigate damages. Petition, Exhibit 5.

Petitioner thereafter transmitted a telex to respondent's agent in London, claiming a loss of $300,000 on the cargo, demanding arbitration in New York City pursuant to the arbitration clause purportedly incorporated in the bill of lading, and nominating its arbitrator. *Id.*, Exhibit 6. Respondent refused the demand for arbitration in a telex dated April 30, 1986, asserting: "[w]e do not accept there is any agreement between the owners and your clients to arbitrate in New York." *Id.*, Exhibit 7. The telex set forth respondent's opinion that the NYPE arbitration clause was neither incorporated into the bill of lading, nor broad enough to encompass the dispute between petitioner and respondent, since they were not the "owners [or] charterers."

Petitioner thereafter filed this motion, arguing that the NYPE arbitration clause (i) is unquestionably incorporated into the bill of lading; and (ii) governs the resolution of this dispute, regardless of its limited scope, because both parties consented to be bound by it.

According to petitioner, respondent demonstrated its consent to be bound by the NYPE arbitration clause when the master of the ship authorized Fedmar to sign bills of lading on his behalf, and petitioner dem-

---

**3.** The location was incorrectly stated as New York, N.Y., when in fact the subcharter was signed in Greeenwich, Connecticut. Regardless of this error in the bill of lading, the location of the subcharter was correctly stated as "Greenwich" in two other documents that incorporated its terms by reference—the master's written authorization of Fedmar to sign bills of lading on his behalf, and the statement of facts about the shipment.

**4.** Elsewhere, the bill of lading's printed language states that the Centrocon Arbitration Clause is to apply. That clause provides for arbitration of "all disputes from time to time arising out of this contract ... in London." Respondent's Memorandum in Opposition, at 3. Where printed and written terms conflict, "an interpretation is preferred which gives effect to the written provisions." Restatement of Contracts § 236(e) (1932).

onstrated its consent to be bound by purchasing the cargo and accepting the bill of lading. Petitioner's Reply Memorandum, at 2–3.

In opposition, respondent contends that the bill of lading did not clearly incorporate the NYPE arbitration clause. Accordingly, respondent asserts that the printed clause contained elsewhere in the bill of lading, requiring arbitration in London, should therefore govern. Respondent's Memorandum in Opposition, at 1, 5.

Alternatively, if the bill of lading is held to incorporate the NYPE arbitration clause, respondent argues that the clause was only intended to govern disputes between the original parties named in the subcharter as "owner and charterer" (Fednav and Stellar), *id.* at 10, and does not bind nonsignatories unless they have expressly assumed the duties of the owner or charterer. Respondent's Supplemental Memorandum, at 3–4.

## DISCUSSION

■ Three requirements must be met before the Court may issue an order compelling arbitration pursuant to the Federal Arbitration Act. There must be (i) jurisdiction in admiralty; (ii) a written agreement to arbitrate; and (iii) an absence of triable issues concerning the making and performance of the arbitration agreement. 9 U.S.C. § 4 (1970).[5]

Jurisdiction in admiralty is unquestionably present, as the dispute involves a "maritime transaction" as defined in 9 U.S.C. § 1. *See Fisser v. Int'l Bank,* 175 F.Supp. 305, 307 (S.D.N.Y.1958).

Petitioner and respondent (sometimes hereinafter referred to as "the parties") do not dispute that *a* written agreement to

arbitrate exists. Their disagreement is over which, if any, of the arbitration clauses contained in the time-charter, subcharter and bill of lading governs the resolution of this dispute.

Petitioner asserts that the parties are bound to resolve their dispute through the NYPE arbitration clause because of its incorporation in the bill of lading. Respondent disagrees and contends that it is bound by only one written arbitration clause—that contained in the time-charter with Fednav. Whether the parties' actions in connection with the bill of lading constituted consent to arbitrate with one another, in view of the limited scope of the arbitration clause incorporated into the bill of lading, is not a fact question, but a question of law that can be resolved without resort to a trial. *Sohtorik Shipping and Trading, Inc. v. Peter Cremer Befrachtungskontor, GMBH. & Co.,* 502 F.Supp. 143, 143–44 (S.D.N.Y.1980).

1. *Does the Bill of Lading Clearly Incorporate the NYPE Arbitration Clause?*

■ The Court does not find it difficult to reach a conclusion on the first issue presented by petitioner's motion. In more than one location, the bill of lading referenced the subcharter's terms in the words "as per charter party". In the catch-all incorporation clause, the subcharter was more specifically referenced by date and location.

Ideally, the incorporation clause should specify both the date of the charter party and the place where it was signed. *Amstar Corp. v. S.S. Union Australia,* 445 F.Supp. 940, 941 (S.D.N.Y.1978). "However, where there is 'no confusion whatsoever concerning who in fact was the char-

---

5. Title 9, U.S.C. § 4 states:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in

such agreement ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

terer on this voyage, or which charter party governed the rights of the charterer vis-a-vis the shipowner,' an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the making of the charter party." *State Trading Corp. of India v. Grunstad Shipping Corp.*, 582 F.Supp. 1523, 1524 (S.D.N.Y.), *aff'd without opinion*, 751 F.2d 371 (2d Cir.1984). *See id.*, 1524 n. 2 (collecting cases).

In one case, the court upheld an incorporation clause which accurately stated only the date of the charter party being incorporated. *Lowry & Co. v. S.S. Nadir*, 223 F.Supp. 871, 874 (S.D.N.Y.1963). In another, the language "as per charter party" was held a sufficiently explicit reference by which to incorporate a particular charter party. *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396, 398–99 (S.D. N.Y.1966), *appeal dismissed*, 372 F.2d 123 (2d Cir.1967).

Thus, it is irrelevant that the bill of lading incorrectly stated that the subcharter had been signed in New York. As between these parties, citation to the date alone was sufficient to clearly incorporate the subcharter's provisions.

The Court rejects respondent's argument that the use of the word "herein" in preference to the word "therein" introduced an ambiguity into the incorporation clause of the bill of lading. The Court believes that the typewritten words "incorporated herein", although awkward and redundant, were inserted to parallel the incorporation language of the printed form, and thus to *emphasize* the parties' intention to import the charter party terms into the bill of lading. The Court does not agree with respondent that this choice of usage is indicative of an intention to incorporate all of the subcharter's terms *except* its arbitration clause.

Moreover, the Court is free to simply disregard the typewritten words "incorporated herein." When these redundant words are deleted, any arguable ambiguity in the incorporation clause disappears. Such an approach is not without justification. As Judge Learned Hand once commented:

> [c]ourts have again and again observed the curious, often fantastic incongruities in charter-parties, bills of lading and insurance policies, composed, as they so often are, of a motley patchwork of verbiage thrown together apparently at random, often in an unfamiliar diction three hundred years old. Particularly in a document meant to do service in varying situations each word of such a discordant medley need not be made to count as we seek to make all words count of carefully prepared contracts drawn for a particular occasion.

*In re The Tregenna*, 1941 A.M.C. 1282, 1290 (2d Cir.1941).

The Court concludes that the bill of lading clearly incorporated the NYPE arbitration clause.

2. *Are Respondent and Petitioner Bound to Resolve their Dispute Pursuant to the NYPE Arbitration Clause?*

The second issue raised by petitioner's motion is more difficult to resolve. It has long been established that "the [Federal Arbitration Act's] requirement of a 'written agreement' for arbitration does not import a condition that only *signatories* to such provisions can be bound to their terms." *Coastal States Trading, Inc. v. Zenith Navigation S.A.*, 446 F.Supp. 330, 336 (S.D.N.Y.1977), citing *Fisser v. Int'l Bank*, 282 F.2d 231, 233 (2d Cir.1960).

There are various methods for binding a charter party non-signatory to that document's arbitration clause. If a charter party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories of the charter party who are linked to that bill through general principles of contract law or agency law may be bound. *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir.1952). Additionally, it may be proven that the non-signatory is an alter ego of the corporation which signed the charter party, or that the signatory was acting in an agency capacity for the nonsignatory.

Under the first method, proving that an arbitration clause is incorporated into a bill of lading to which a nonsignatory is connected is not the only prerequisite for binding that party to submit its disputes to arbitration. The language of the clause must be broad enough to allow nonsignatories' disputes to be brought within its terms. *Sohtorik*, 502 F.Supp. at 144. The courts recognize that parties are free to choose their contractual language, and an arbitration clause governing "all disputes arising out of this charter" is meant to have a much broader application than one governing disputes between "owners and the charterers." *Production Steel Co. of Illinois v. S.S. Francois L.D.*, 294 F.Supp. 200, 201 (S.D.N.Y.1968). *See Lowry (Le Moyne)*, 253 F.Supp. at 398; *Taiwan Navigation Co. v. Seven Seas Merchants Corp.*, 172 F.Supp. 721, 722 (S.D.N.Y.1959). Thus, where the restrictive "owner/charterer" language is used in the arbitration clause, "it is indeed difficult to bind to that clause one who is not a signatory to the charter party." *Lowry (Nadir)*, 223 F.Supp. at 873–74. *See Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 505–06 (2d Cir.1965); *General Auth. for Supply Commodities v. S.S. Capetan Costis I*, 631 F.Supp. 1488, 1489 (S.D.N.Y.1986); *Production Steel*, 294 F.Supp. at 201–02; *Taiwan*, 172 F.Supp. at 722.

Since neither respondent nor petitioner signed the subcharter, petitioner's motion attempts to bind not one, but two strangers to the charter party to the limited scope NYPE arbitration clause. Realizing the difficulty of accomplishing this, petitioner urges the Court to "resist the unreasonable approach" of strictly construing the terms owner and charterer. Petitioner's Supplemental Memorandum at 4. However, petitioner asks the Court to expand the arbitration clause beyond its plain meaning, contrary to the settled rule in this jurisdiction. *Production Steel*, 294 F.Supp. at 201–02.

Many of the cases relied upon by petitioner involved broad scope arbitration clause language, *e.g.*, *Henkel, K.G. v. M/T Stolt Hippo*, 1980 A.M.C. 2618, 2619 (S.D.N.Y.1980); *Bunge Corp. v. M/T Stolt Hip-*

*po*, 1980 A.M.C. 2611, 2612 (S.D.N.Y.1979); *Coastal*, 446 F.Supp. at 335 n. 6; *Midland Tar Distillers, Inc. v. M/T Lotos*, 362 F.Supp. 1311, 1312 (S.D.N.Y.1973); *Lowry (Le Moyne)*, 253 F.Supp. at 397. The Court has discovered only a few cases in addition to those cited by the parties where the narrow scope "owners and charterers" language was at issue. *See Import Export*, 351 F.2d at 505; *General Auth.*, 631 F.Supp. at 1489; *Sohtorik*, 502 F.Supp. at 144; *Production Steel*, 294 F.Supp. at 200; *Taiwan*, 172 F.Supp. at 721–22; *Chilean Nitrate Sales Corp. v. The Nortuna*, 128 F.Supp. 938, 940 (S.D.N.Y.1955). Arbitration was ordered in only two of these cases—*Import Export* and *Chilean Nitrate*. In both cases, the nonsignatory had expressly assumed the obligations of the owner or charterer or was otherwise bound by general agency law or contract law principles.

The principal case relied on by petitioner in support of its motion is *Import Export*. As petitioner notes, the facts in *Import Export* resemble those in the present dispute. The arbitration clause covered all disputes between "owners and charterers", and cargo interests (i.e., the subcharterer/holder of the bill of lading and notify party) were attempting to compel an entity which had assumed the disponent owner's obligations to arbitrate their claims for loss of the cargo.

However, as *Import Export* makes clear, if the scope of the clause is limited to disputes between owners and charterers, the Court may compel two parties to arbitrate only if each can be construed as either an owner or charterer. The scope language "should be carefully if not restrictively construed" and may not be "unduly stretch[ed]" to include nonsignatories. 351 F.2d at 506.

The party ordered to arbitrate in *Import Export*, Mississippi Valley Barge Line ("Mississippi"), had entered into a separate written agreement with the disponent owner expressly "assum[ing] all the obligations and privileges of [the disponent owner] under the subcharter." *Id.* at 505. No stretching was required for the court to

reach the conclusion that Mississippi had knowingly taken on that obligation.

Here, in contrast, the master's written authorization of Fedmar to sign and release bills of lading on his behalf in accordance with the subcharter does not imply that all the obligations and privileges of the disponent owner were being assumed by respondent. Although the authorization and the subsequently issued bill of lading certainly connected respondent to the subcharter, they do not serve as sufficiently unequivocal indicators that respondent deemed itself an "owner" for all purposes.

Furthermore, in *Import Export*, Mississippi was ordered to arbitrate with only one of the two cargo interests—the subcharterer/bill of lading holder. The court held that the mere notify party/cargo owner was not bound by the narrow scope arbitration clause language. 351 F.2d at 505. *See also Production Steel*, 294 F.Supp. at 201 ("purpose of [incorporation] clause in the bill of lading was not to impose upon [consignee/cargo owner] the obligations and rights of the parties to the charter party ...").

In the present case, petitioner is the cargo owner, notify party and holder of the bill of lading, but not the "charterer". Stellar is the charterer. The Court rejects petitioner's contention that it demonstrated its consent to assume the status of charterer merely by purchasing the cargo and accepting the bill of lading. Thus, even if respondent were deemed to be the "owner" under the limited scope arbitration clause language, petitioner could not be compelled to arbitrate its disputes with respondent unless Stellar was its agent or alter ego.

Petitioner emphasizes that Stellar booked the ship on its behalf and that they are both subsidiaries of Continental Grain. From these facts, petitioner vaguely concludes that it has "succeeded" to the charterer's rights and obligations, and that its dispute with respondent therefore fits within the scope of the subcharter's arbitration clause. Petitioner's Supplemental Memorandum, at 1. The Court does not agree.

Although Stellar may have chartered the ship on behalf of petitioner, this fact is not disclosed in the subcharter. Nor does the subcharter state that Stellar was signing as an agent, either for petitioner or for any other principal. It has been held that the charter must contain unambiguous language indicating that (i) the party signing is doing so as the agent for another, or (ii) the nonsignatory expressly consents to be bound by narrow scope arbitration clause language. *General Auth.*, 631 F.Supp. at 1490. *See also Chilean Nitrate*, 128 F.Supp. at 940, where the court ordered a subsidiary which had signed the charter party as agent for its parent to arbitrate its claim for cargo damage with the company which had expressly assumed the rights and liabilities of the disponent owner. The court held that the subsidiary was a "mere instrumentality" of its parent, and thus disregarded their separate corporate existence. *Id.* at 941.

■ A mere mention in the subcharter of an additional entity having some connection to it does not, without more, bind that entity to arbitrate its disputes. *Taiwan*, 172 F.Supp. at 722 (entity named in charter party as guarantor not compelled to arbitrate with vessel owner). Even if the subcharter had stated that the ship was being chartered by Stellar on petitioner's behalf, which it failed to do, this would not have served as sufficient indication that petitioner was assuming the rights and obligations of Stellar. *General Auth.*, 631 F.Supp. at 1490. At the very least, the writing must suggest that petitioner has agreed to arbitrate as a principal. *See Taiwan*, 172 F.Supp. at 722.

■ Furthermore, the Court finds it immaterial that Stellar and petitioner are both subsidiaries of Continental Grain. Subsidiaries of the same parent are not necessarily bound to each others' contractual obligations. "[T]he principles utilized to determine whether in such cases, arbitration is appropriate are merely those which are employed in other contractual disputes to ascertain whether, on some theory, it is just to disregard independent corporate existence and hold one corporation responsible for the contractual obligations of another." *Coastal*, 446 F.Supp. at 336.

To hold that petitioner is the charterer in these circumstances, the Court would have to find that Stellar is petitioner's alter ego. Petitioner states that Stellar, a co-subsidiary, booked a ship on its behalf, but does not allege that Stellar had "no separate mind, will, or existence of its own." *Fisser*, 282 F.2d at 238.[6] Superficial factors indicating that two corporate entities are related do not dispose of the alter ego question. *Coastal*, 446 F.Supp. at 334. It is more important to know whether the controlling corporation dominates the finances, policy, and business practices of the controlled corporation. The fact that Stellar booked ships for subsidiaries of Continental Grain does not suggest that it is a "puppet" of those subsidiaries. In fact it is more likely "that the degree of control necessary to invoke the alter ego doctrine would be exercised by a parent over its subsidiaries, rather than by one subsidiary over another." *See Coastal*, 446 F.Supp. at 337.

The Court concludes that petitioner cannot be included within the definition of the term "charterer." Therefore, the dispute between the parties is not encompassed within the scope of the NYPE arbitration clause.

## CONCLUSION

In sum, petitioner cannot establish that either it or respondent is bound to resolve its disputes under the arbitration clause of the subcharter.[7] Accordingly, the petition must be denied.

So ordered.

---

6. Since the Court holds below that neither petitioner nor respondent is bound by the NYPE arbitration clause, it does not believe that a motion to amend the pleadings would be productive.

7. In view of the Court's holding, it is unnecessary to consider respondent's further argument for dismissal on *forum non conveniens* grounds.