The MAIZE BOARD OF THE
REPUBLIC OF SOUTH
AFRICA, Plaintiff,

v.

M/V COURAGEOUS I, her engines, boilers, etc., Ranger Wideseas, Inc., Gulf Shipping Co. of Panama Ship Management Corporation, Astromarine, Inc., Argo Company of Canada, Ltd., James Shipping Limited, Eagle Star Insurance Company of America, Continental Grain Company, and Continental Grain Export Corporation, Defendants.

No. 86 Civ. 5175 (JES).

United States District Court,
S.D. New York.

June 1, 1988.

Haight, Gardner, Poor & Havens, New York City, for plaintiff; R. Glenn Bauer, of counsel.

Hills, Betts & Nash, New York City, for defendants M/V Courageous, Ranger Wideseas, Inc., and Astromarine, Inc.; Robert B. Fougner, Mary T. Reilly, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

In this action, defendants Ranger Wideseas, Inc. ("Ranger"), Astromarine, Inc.

("Astromarine") and M/V Courageous I ("Courageous") have moved pursuant to 9 U.S.C. § 3 (1982) for a stay of plaintiff's claims against them pending arbitration in London. For the reasons that follow, the motion is granted.

Ranger is the owner of the vessel Courageous, and Astromarine is the New York agent of Ranger (Ranger and Astromarine are collectively referred to as "Ranger"). *See* Affidavit of Mary T. Reilly ("Reilly Aff.") at ¶ 2. The facts underlying this case involve a series of agreements through which the Courageous was eventually chartered to carry a cargo of corn. Plaintiff brings this action for damages to the corn as consignee and receiver of the shipment. *See* Complaint at ¶ 14.

Ranger time-chartered the Courageous to Argo Company of Canada, Ltd. ("Argo") for a period of two years, and Argo subchartered the vessel to James Shipping Ltd. ("James") for the same period. *See* Reilly Aff. at ¶¶ 8-9. The two time charters both provided for arbitration of disputes in New York. *See* Affidavit of R. Glenn Bauer ("Bauer Aff."), Ex. 2 at cl. 17, Ex. 3 at cl. 17. Under the two time charters, James was given authority "to issue and sign Bills of Lading as presented on Charterer's usual form ... without prejudice to the terms and conditions of (the time charters)." *See* Bauer Aff., Ex. 2 at cl. 44(A), Ex. 3 at cl. 44(a).

James then voyage chartered the vessel to Stellar Chartering and Brokerage, Inc. ("Stellar"), a subsidiary of Continental Grain Company ("Continental"). *See* Reilly Aff. at ¶¶ 10-11. The voyage charter party contains a Centrocon arbitration clause requiring arbitration in London. *See* Bauer Aff., Ex. 4 at cl. 31. The Centrocon arbitration clause provides in pertinent part:

> All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business

in London who shall be members of the Baltic and engaged in the shipping and/or grain trades, one to be appointed by each of the parties with power to such Arbitrators to appoint an Umpire.

Bauer Aff. at ¶ 6; *see* Reilly Aff. at ¶ 6.

A bill of lading covering the cargo was prepared by Continental on its form, *see* Bauer Aff. at ¶¶ 17-22, and was signed "for the master" by Astral International Shipping Services ("Astral"),[1] *see* Bauer Aff., Ex. 5. Astral had been given authority by the captain of the Courageous to sign bills of lading on the captain's behalf in accordance with the governing charter party. *See id.*, Ex. 13. The bill of lading provides that "[a]ll terms, conditions and provisions of the ... Arbitration Clause of the 'Centrocon' charter-party to apply." *See id.*, Ex. 5 at cl. 10. It also provides that "all terms, conditions and exceptions as per charter party covering this fixture ... to be considered as incorporated herein as if fully written, anything to the contrary contained in this bill of lading notwithstanding." *See id.*, Ex. 5. There is no dispute that "charter party covering this fixture" refers to the voyage charter party between James and Stellar. *See* Reilly Aff. at ¶ 15; Bauer Aff. at ¶ 21 & Ex. 19 at 41.

## DISCUSSION

■ Two Centrocon arbitration clauses are involved in this case. One is the arbitration clause in the voyage charter party between James and Stellar, and the other is the arbitration clause printed in the bill of lading. The parties do not dispute that the charter party between James and Stellar was validly incorporated in the bill of lading. It is also undisputed that any right to arbitrate that Ranger may have cannot be predicated on the charter party arbitration clause incorporated in the bill of lading. An owner can neither take advantage of nor be bound by an arbitration clause in an incorporated charter party to which the owner is not a party. *See Instituto Cuba-*

---

1. Astral was nominated by Stellar to act as agent, although there is some dispute as to whether Astral acted as an agent for Stellar or for James. *See* Reilly Aff. at ¶ 12; Bauer Aff. at ¶¶ 11, 12, 14 & Exs. 9, 10 12. Nevertheless, there is no dispute that Astral was authorized by the master to sign bills of lading on his behalf. *See id.*, Ex. 13.

*no de Estabilizacion Del Azucar v. T/V Golden West*, 246 F.2d 802, 804 (2d Cir.), *cert. denied*, 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1957); *Amstar Corp. v. S.S. Naashi*, 1976 A.M.C. 2093, 2095–96 (S.D.N. Y.1976).

Ranger, therefore, must rely on the arbitration clause printed in the bill of lading itself. However, before Ranger can compel arbitration against plaintiff, it is essential that Ranger itself be bound by the arbitration clause, because if that clause cannot be enforced against Ranger, there would be no mutuality of obligation and therefore no binding agreement to arbitrate. *See Amstar Corp., supra*, 1976 A.M.C. at 2095.

■ On the facts of this case, the issue of whether Ranger was a party to and therefore bound by the bill of lading turns on whether the master was acting solely for the charterer and not for the owner when it authorized Astral to sign bills of lading "for the master." The general rule is that the owner of a vessel is bound by the terms of a bill of lading when it is signed "for the master" with the authority of the owner. *See EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715, 719 (1st Cir. 1984); *Gans S.S. Line v. Wilhelmsen* (The Themis), 275 F. 254, 262 (2d Cir.1921). Plaintiff, however, relying on *Yeramex Int'l v. S.S. Tendo*, 595 F.2d 943 (4th Cir. 1979), argues that in this case, when the master authorized Astral to sign bills of lading "for the master," he was acting solely for James, the time charterer, and not for Ranger, the owner, and that therefore the general rule is inapplicable.

However, an analysis of the facts in *Yeramex* demonstrates that that case is inapplicable here. In that case, the charterer had assumed *exclusive responsibility* for issuing bills of lading. *See id.* at 948. In addition, the governing charter party in that case required the charterer to indemnify the owner "from all consequences arising out of Master or agents signing Bills of Lading...." *See id.* at 947.

■ In this case, although James was authorized to sign bills of lading under the charter parties, that authority was not made exclusive, as in *Yeramex*, nor did James undertake any agreement to indemnify Ranger.[2] Thus, it is clear that in this case, unlike *Yeramex*, the master was not acting exclusively as the agent of the charterer in authorizing Astral to sign bills of lading. It follows that under the general principle of law enunciated above, the owner is liable for the acts of his agent and is therefore bound to the terms of the contract evidenced by the bill of lading, including the Centrocon arbitration clause printed on the face of the bill of lading itself.[3] *See Pacific Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 237 (5th Cir.1985); *Gans S.S. Line, supra*, 275 F. at 262.

Plaintiff further argues that in any event, this dispute is not encompassed by the bill of lading arbitration clause because that arbitration clause requires arbitration only of disputes "arising out of this contract." Plaintiff argues that the "contract" referred to is the voyage charter party between James and Stellar, pursuant to which the bill of lading was issued, and that therefore the arbitration clause does not apply to any disputes between plaintiff and Ranger. Plaintiff concludes that, properly construed, the bill of lading clause binds only those parties which would be bound by the incorporated charter party clause.

■ The Court does not find plaintiff's argument persuasive. To accept that argument, the Court would have to conclude

---

2. Moreover, the authorization in the time charter parties for James to sign bills of lading was to sign bills of lading on James' form, while the bill of lading here was prepared by Continental on its form, for its subsidiary, Stellar.

3. It is interesting to note that plaintiff's argument that the master was acting solely for the charterer, if taken to its logical conclusion, might compel the conclusion that Ranger was

not a carrier within the meaning of COGSA and therefore not liable *in personam* under COGSA to the plaintiff. *See Yeramex Int'l v. S.S. Tendo*, 595 F.2d 943, 948 (4th Cir.1979).

The Court's conclusion that Ranger is bound by the bill of lading does not foreclose the possibility that other parties may also be bound. However, that issue is not before the Court.

that the bill of lading arbitration clause is merely superfluous to the charter party arbitration clause which was incorporated by reference.[4] The Court can find no basis for disregarding a separate agreement to arbitrate set forth in the bill of lading merely because another agreement to arbitrate between different parties was also incorporated by reference into the bill of lading.

■ Plaintiff also argues that the bill of lading arbitration clause cannot and should not be enforced because it conflicts with the charter party arbitration clause, and the bill of lading provides that the charter party is incorporated "anything to the contrary contained in this bill of lading notwithstanding." *See* Bauer Aff., Ex. 5. However, that argument lacks merit because there is no conflict between the two arbitration clauses. Although such a conflict would arise if the bill of lading clause were different from the incorporated charter party clause, *see Continental U.K. Ltd. v. Anagel Confidence Compania Navieva, S.A.,* 658 F.Supp. 809, 811 n. 4 (S.D.N.Y. 1987), the Centrocon arbitration clauses at issue here are identical, with both providing for arbitration in London. The fact that the arbitration clause printed in the bill of lading binds additional parties is therefore of no consequence.

■ Nor can the Court accept the argument that the bill of lading arbitration clause should not be enforced because it conflicts with the time charters, which each contained a New York arbitration clause. The bill of lading arbitration clause does not require Ranger to arbitrate in London with anyone with whom it is already bound to arbitrate in New York, and there is therefore no conflict between the obligations to arbitrate set forth in the time charters and in the bill of lading.

The Court concludes, therefore, that any disputes between plaintiff and Ranger must be arbitrated in London and that any claims asserted here between those parties must be stayed.

The vessel Courageous has also moved for a stay pending arbitration. However, it is far from clear that an *in rem* dispute against the vessel is subject to arbitration. Although a vessel ratifies the bill of lading by sailing, *see Demsey & Assoc. v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2d Cir.1972), the Court has found no authority supporting the proposition that a vessel can force a plaintiff to arbitrate an *in rem* dispute against the vessel.

■ However, the Court need not resolve the merits of that claim because even assuming arguendo that the dispute between plaintiff and the vessel is not arbitrable, the Court concludes for other reasons that the action against the vessel should be stayed. Proceeding in this action against the Courageous *in rem* while arbitration proceeds against Ranger and Astromarine could lead to inconsistent judgments and would undermine the agreement of the parties that the merits of the underlying dispute, which raise virtually identical issues with respect to both the *in personam* liability of the owner and the *in rem* liability of the vessel, should be arbitrated. Therefore, the Court will stay this action against the Courageous pending resolution of arbitration of plaintiff's claims against Ranger and Astromarine. *Cf. Bunge v. Stolt Hippo,* 1980 A.M.C. 2611, 2616 (S.D. N.Y.1980).

### CONCLUSION

For the reasons stated, the motions of defendants Ranger, Astromarine, and Courageous to stay this action pending arbitration are granted.

It is SO ORDERED.

---

4. Plaintiff argues that the bill of lading arbitration clause should be limited to disputes arising under the voyage charter party because the bill of lading terms should be strictly construed, relying on *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503 (2d Cir. 1965). That reliance is misplaced because the arbitration clause in that case was narrower than the one at issue here and was limited to disputes "between Disponent Owners and the Charterers." *See id.* at 505–06. Here, the clause covers "all disputes ... arising out of this contract," and the restricted reading plaintiff seeks is therefore not warranted.