**OFFICE OF CEREALES OF THE REPUBLIC OF TUNISIA, et al.**

v.

**COASTAL CARRIERS CORPORATION.**

**Civ. No. JFM–91–896.**

United States District Court,
D. Maryland.

Oct. 3, 1991.

William Dorsey, III, Semmes, Bowen & Semmes, Baltimore, Md. and William France, Healy & Baillie, New York City, for plaintiffs.

John Roberts, Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

At issue in this case is whether a dispute between plaintiffs, the Office of Cereales of the Republic of Tunisia and the Embassy of the Republic of Tunisia, and defendant, Coastal Carriers Corporation, should be resolved in an arbitration proceeding or in litigation before the bankruptcy court of this district. For the reasons which follow, I conclude that the dispute should be submitted to arbitration.

### I.

On February 16, 1989, Coastal filed a petition under Chapter 11 of the Bankruptcy Code. At the time of the filing Coastal, which is headquartered in Annapolis, Maryland, was engaged in the business of chartering its ocean-going barge, PRODUCER, for the carriage of cargo.

On November 16, 1989, Coastal, operating as a debtor-in-possession, entered into a contract with the Embassy of Tunisia whereunder Coastal agreed to charter the PRODUCER and a tug to the Embassy for the carriage of approximately 18,000 tons of wheat from California to Tunisia. On December 4, 1989, Coastal entered into a standard towage agreement with Hornbeck Offshore Services, Inc., as owner of the Tug Goliath. This agreement provided for the time charter of the tug for the purpose of towing the PRODUCER with its cargo of wheat from California to Tunisia.

The wheat was loaded on board the PRODUCER, and on December 15, 1989 a bill of lading was issued. Shortly thereafter, the PRODUCER, being towed by the Goliath, sailed from Sacramento through the Panama Canal toward Tunisia. On or about March 5, 1990, the PRODUCER sank in the Atlantic off the island of Madeira. Its cargo of wheat, valued at $3,800,000, was lost.

The charter contained an arbitration clause which provided, in part, that "should any dispute arise between the owners and the charterers, the matter in dispute shall be referred to three persons at New York...." The bill of lading contained an incorporation clause which provided that "[a]ll terms, conditions and exceptions of the Charter Party including the arbitration clause, and any addenda thereto to be considered fully incorporated herein. If there is any conflict between the Bill of Lading and the Charter Party, the Charter Party is to govern."

Coastal refused to pay plaintiffs for the cargo loss, and on February 20, 1991, plaintiffs demanded that the dispute be submitted to arbitration. Coastal would not agree to arbitration, and on March 28, 1991, plaintiffs filed this action. In responding to the complaint, Coastal filed a suggestion of bankruptcy and sought a stay pursuant to 11 U.S.C. § 362(a). Plaintiffs then filed a motion to withdraw the action from the bankruptcy court and for a series of ancillary orders which, in effect, would stay further proceedings in this court pending arbitration in New York.[1]

Related litigation is pending in the United States District Court for the Southern District of Texas. On March 15, 1991, Hornbeck Offshore (1984) Corporation and Hornbeck Offshore Operators, two companies affiliated with Hornbeck Offshore Services (the three being collectively referred to as "Hornbeck"), filed a complaint for exoneration from, or limitation of, liability for any and all damages arising from the sinking of the PRODUCER. Plaintiffs have filed in that action, as they are required to do in order to prevent a waiver of their rights, a claim for the cargo loss.[2] Coastal has also intervened in the Texas litigation, asserting a claim for indemnity and contribution and requesting that the action be stayed pending the resolution of the underlying claims in the bankruptcy court. Although the towage agreement between Coastal and Hornbeck Offshore Services contained a clause providing for arbitration of disputes in New York, Coastal has not invoked that clause.

## II.

As a threshold matter, Coastal contends that the Office of Cereales—the agency of the Republic of Tunisia which is denominated as the owner of the cargo on the bill of lading—may not invoke the arbitration clause contained in the charter because the Embassy of Tunisia, not the Office of Cereales, was the signatory for the Republic on the charter. This contention is without merit. The Embassy and the Office of Cereales are both instrumentalities of the Republic, and Coastal concedes that it was fully aware that both of them were representing the Republic in executing the charter and the bill of lading. It is no more appropriate for Coastal to assert that it is not bound to recognize the Republic as the fully disclosed principal to both agreements than it would be for the Republic to seek to avoid the arbitration clause by asserting the alleged legal separateness of its own agencies. *See In re arbitration between Transnational Maritime, Inc. and Ta Peng S.S. Co., Ltd.,* 1975 A.M.C. 1411, 1412–13 (S.D.N.Y.1975).

Moreover, the bill of lading (to which the Office of Cereales was a party) specifically incorporated by reference the arbitration clause of the charter. Coastal argues that this is not a matter of significance since the arbitration clause itself obligated only the "owners and charterers" (identified in the charter as the Embassy and Coastal, respectively) to arbitrate. As a matter of abstract logic, this argument may have some appeal but in this factual context it makes little sense. If it were accepted, it would mean that the parties committed the wholly nugatory act of specifically incorpo-

---

1. On June 5, 1991, after Coastal failed to appoint an arbitrator, plaintiffs filed a petition to compel arbitration in the Southern District of New York. Proceedings in that case have been stayed pending my decision here.

2. Plaintiffs have also instituted an independent action against Hornbeck Offshore Services, which was not named as a plaintiff in the other action. Plaintiff asserts the same claim against Hornbeck Offshore Services that it asserts against the other Hornbeck companies.

rating into the bill of lading a clause from the charter which by its own terms could not be binding upon them. It is unreasonable to infer that this was their intent. *See Pride Shipping Corp. v. Chung Hwa Pulp Corp.*, [1991] 1 Lloyd's Rep. 126, 130.[3]

## III.

■ Having concluded that the arbitration clause can be enforced by the plaintiffs, I must now decide whether it should be enforced. This question involves balancing the potentially conflicting interests served by the Federal Arbitration Act and the Bankruptcy Code in the context of the particular facts presented. *See In re FRG*, 115 B.R. 72, 75 (E.D.Pa.1990).[4] Three factors persuade me that here the arbitration clause should be enforced.

First, the dispute between the parties concerning the cargo loss is of a type which is commonly arbitrated. Arbitrators have both the experience and the expertise to resolve the issues fairly, intelligently and efficiently.

Second, to deny arbitration here might in the long run undermine one of the fundamental policies underlying the Bankruptcy Code itself: the promotion and effectuation of reorganizations. If shippers may not effectively include in post-petition contracts with bankruptcy trustees or debtors-in-possession arbitration clauses which are common in the shipping industry, they will be discouraged from dealing with entities undergoing reorganization and choose to take their business elsewhere.

Third, denying enforcement of the arbitration clause might well have the effect of requiring the bankruptcy court to adjudicate a dispute which will have no monetary impact upon the bankruptcy estate. If Coastal is not held liable to plaintiffs, obviously the estate will not be adversely affected; and if Coastal is held liable to plaintiffs, it is likely that the liability will be covered by Coastal's insurer (or by the insurer for Hornbeck). The resources of the bankruptcy court are too limited to permit their profligate use.

The only consideration which arguably favors denial of arbitration is the potential for adjudicating all related disputes in a single consolidated proceeding. Coastal contends that Hornbeck is subject to the jurisdiction of the bankruptcy court and that, if the case is retained in the bankruptcy court, Hornbeck can be required to abandon the pending Texas litigation in favor of proceedings before the bankruptcy court.

■ Even if that is so, the possibility that the Texas litigation will duplicate the arbitration proceedings does not preclude enforcement of the arbitration clause.[5] *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–20, 103 S.Ct. 927, 938–939, 74 L.Ed.2d 765 (1983). Moreover, I am not persuaded that any duplication of effort will, in fact, result. As stated above, there was an arbi-

---

3. It is also worthy to note that the cases cited by Coastal in support of its contention that the designation "owners and charters" should be strictly construed to include only the signatories to the charter involved instances where the signatory was attempting to bind an unwilling non-signatory to arbitration. *See Continental U.K. Ltd. v. Anagel Confidence Compania Naviera S.A.*, 658 F.Supp. 809, 813–16 (S.D.N.Y. 1987); *Production Steel Co. v. S.S. Francois L.D.*, 294 F.Supp. 200, 201–02 (S.D.N.Y.1968). Here, the reverse is true; the alleged non-signatory to the charter (the Office of Cereales) is attempting to compel the signatory Coastal to arbitrate.

4. Several courts have recently held that the strong federal policy favoring arbitration renders enforcement of an arbitration clause presumptively correct and that the burden is upon the party opposing arbitration to establish that enforcement would seriously jeopardize the objectives of the Bankruptcy Code. *See, e.g., Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1160–61 (3rd Cir.1989); *In re Chorus Data Systems, Inc.*, 122 B.R. 845, 852 (Bankr.D.N.H.1990). Because I find that, whichever party has the burden on the issue, the arbitration clause should be enforced, I need not consider whether I agree with these decisions or whether they are distinguishable in any critical respect.

5. It is to be noted that Coastal's insurer is litigating on Coastal's behalf both plaintiffs' claims against Coastal and Coastal's claims against Hornbeck. Accordingly, the assets of the bankruptcy estate will not be diminished by simultaneous prosecution of the arbitration proceedings and the Texas litigation.

tration clause in the standard towage agreement between Coastal and Hornbeck Offshore Services, and Coastal therefore appears to be entitled to demand that any disputes between it and Hornbeck be arbitrated. Further, although there was no direct formal contract between plaintiffs and Hornbeck, plaintiffs allege that Hornbeck may have signed the bill of lading and may be subject to the arbitration clause incorporated by reference into the bill. Even if that is not so, Hornbeck may decide that since plaintiffs' claims against Coastal and Coastal's claims against Hornbeck are subject to arbitration, it is in its own interest to submit voluntarily to arbitration concerning any disputes between it and plaintiffs. In any event, any facts decided in the Texas litigation will most probably impact most directly upon issues pertaining to Coastal's and Hornbeck's respective insurance coverages. If, as a result of findings made in Texas and/or in the arbitration proceedings, this turns out not to be the case and Coastal is held liable for an uninsured claim, there will be time enough for the bankruptcy court to determine the priority which should be given to any arbitration award granted in favor of plaintiffs.

For these reasons I find that the matters in dispute between plaintiffs and Coastal should be resolved by arbitration. To accomplish that end, I will enter an order granting plaintiffs' motion to withdraw and staying the action pending arbitration.[6]

### ORDER

For the reasons stated in the memorandum entered herein, it is this 3rd day of October 1991

ORDERED

1. Plaintiffs' motion to withdraw this action from the bankruptcy court is granted;

2. Further proceedings in the action are stayed pending arbitration between the parties in New York; and

---

[6]. Because I find that the action should be stayed, there is ample cause for me to withdraw the reference pursuant to the permissive with-

3. The action is administratively closed, subject to being reopened subject upon good cause shown.

drawal provision of 28 U.S.C. § 157(d). Therefore, I need not decide whether or not the withdrawal is mandatory.