**OTTO WOLFF HANDELSGESELLSCHAFT, mbH, Plaintiff,**

v.

**SHERIDAN TRANSPORTATION COMPANY, et al., Defendants.**

**Civ. A. No. 92–cv–194.**

United States District Court, E.D. Virginia, Norfolk Division.

July 22, 1992.

David Neil Ventker, Huff, Poole & Mahoney, P.C., Virginia Beach, Va., for plaintiff.

Denham Arthur Kelsey, Andrew Jackson Timms, Hunton & Williams, Norfolk, Va., for defendants.

## MEMORANDUM ORDER

CLARKE, District Judge.

This matter comes before the Court on the Defendants Motion to Stay this action pending arbitration. Admiralty and maritime jurisdiction is proper pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. For the reasons stated from the bench and the those set out more fully below, Defendants' motion is DENIED.

## FACTS

The plaintiff, Otto Wolff Handelsgesellschaft ("Otto Wolff"), is a German corporation doing business in various ports of the United States, including Norfolk, Virginia. Otto Wolff purchased 5006.8 metric tons of deformed concrete reinforcing bars of new billet steel ("rebars") from Port Everglades Steel Corporation ("Port Everglades"), a steel exporter. The rebars were to be delivered to the Otto Wolff's agent in San Juan, Puerto Rico. Port Everglades chartered the barge James Sheridan from Defendant Sheridan Transportation to deliver the rebars. A charter party served as the contract between Port Everglades and Sheridan Transportation. Port Everglades had exclusive use of the barge during the term of the charter party. After Sheridan Transportation delivered the James Sheridan to Port Everglades, stevedores hired by Port Everglades loaded the cargo into the barge over several days. The defendants allege that it rained on and off during the loading, causing the ship's holds to become thoroughly wet. The bill of lading was issued to Otto Wolff by Port Everglades. It noted that, at the time of loading, the cargo had "slight atmospheric rust".

After unloading the rebars in Puerto Rico, Otto Wolff complained to Sheridan Transportation that the cargo had suffered extensive amounts of rust and corrosion. When attempts to negotiate a settlement failed, Otto Wolff brought suit against Sheridan Transportation, the barge James Sheridan, and the tugboat Peggy Sheridan ("the Defendants"), alleging failure of the vessels and the crews to protect the rebars and to make the holds fit for the cargo. Otto Wolff is seeking $121,078.78 for their loss due to the diminished value of the cargo, and the cost of surveys, damage evaluations and miscellaneous expenses.

The Defendants have filed a Motion to Stay Pending Arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the Act"). Defendants argue that Otto Wolff's claims are subject to the provisions of the charter party, including its arbitration clause, which were incorporated by reference into the bill of lading. Therefore they move that the Court stay these proceedings, pursuant to the Act, in order

that this dispute may be referred to arbitration.

## DISCUSSION

### Arbitration

The Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements. *Whiteside v. Teltech Corp.,* 940 F.2d 99, 101 (4th Cir.1991). Accordingly, there is a presumption in favor of arbitrability. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 924 F.2d 550, 554 (4th Cir.1991). However, the Act "leaves the interpretation of an agreement to the application of common law principles of contract law." *Id.* (citing *Perry v. Thomas,* 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987)).

Three requirements must be met before the Court may issue an order compelling arbitration pursuant to the Act. There must be (1) jurisdiction in admiralty; (2) a written agreement to arbitrate; and (3) an absence of triable issues concerning the making and performance of the arbitration agreement. 9 U.S.C. § 4 (1970); *Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.,* 658 F.Supp. 809, 812 (S.D.N.Y.1987). The parties appear to agree that the first two requirements have been met. The question to be resolved is whether the written agreement to arbitrate, found in the charter party, applies to Otto Wolff. More specifically, the two issues to be resolved in this case are: (1) whether the bill of lading incorporates the charter party; and (2) if the bill of lading does in fact incorporate the charter party, whether the arbitration agreement contained therein is binding upon Otto Wolff.

### Incorporation of the Charter Party into the Bill of Lading

Port Everglades issued a bill of lading for the rebars to Otto Wolff. The relevant portion of the bill of lading reads:

All terms and conditions, liberties, and exceptions of the Charter Party, dated as overleaf, are herewith incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading and after discharging.

The bill of lading also states at the top of each of the two pages that it is "TO BE USED WITH CHARTER–PARTIES." The charter party is the agreement between Sheridan Transportation, as agents for the Owners of the vessel, and Port Everglades, the Charterer. It contains a paragraph regarding arbitration which provides:

Should any dispute arise between Owner and the Charterer, the matter in dispute shall be referred to three persons at New York unless otherwise agreed, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

As a general rule, where the bill of lading issued under a charter party is negotiated to a third party consignee, the bill of lading becomes the contract of carriage. If the parties wish to make sure that the terms of the charter party apply as well, the charter party should be incorporated by reference into the bill of lading, and the ultimate holder of the bill of lading must have actual or constructive notice of the incorporation. *See State Trading Corp. v. Grunstad Shipping,* 582 F.Supp. 1523 (S.D.N.Y.1984); T. Schoenbaum, *Admiralty & Maritime Law* § 9–11, at 308 (1987). Otto Wolff does not dispute that a charter party may be incorporated into a bill of lading by reference. *Industria E. Comercio De Minerios v. Nova Genuesis Societa,* 172 F.Supp. 569, 576 (E.D.Va.1959) (citing *Son Shipping Co. v. De Fosse & Tanghe,* 199 F.Supp. 687 (2d Cir.1952)). Otto Wolff argues, however, that the incorporation clause in this bill of lading is not specific enough to provide it with either actual or constructive knowledge of the specific charter party involved or its terms.

In support of this contention, Otto Wolff points out that the bill of lading is not a detailed document and makes no specific reference to arbitration, or any suggestion

that a consignee has agreed to arbitrate. There is no indication as to who the actual parties to the charter party agreement are, when such an agreement was signed, where it was signed, what type of charter party agreement was involved, or whether there were any peculiar terms and conditions to the agreement. No one from Otto Wolff saw the bill of lading until after the cargo was delivered in Puerto Rico and the damage discovered. Finally, on the front of the bill of lading, the box for freight charges which makes reference to a charter party was left blank. In short, Otto Wolff contends that there was no way for the recipient of the bill of lading to have any knowledge as to what charter party agreement, if any, was involved.

Otto Wolff cites the court's opinion in *Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 1991 A.M.C. 1499, 1502–03, 1991 WL 51087 (S.D.N.Y.1991), to support the view that the incorporation clause of the bill of lading is not specific enough to provide notice of the incorporation of the charter party. The court found that "this Bill of Lading does not name all the parties to the charter party it was attempting to incorporate, or state the date or place of its making. Thus, the Bill of Lading in this case 'does not give sufficient information for its holder to find the right charter party ...'". *Id.* at 1503 (citing *New York Marine Managers, Inc. v. M/V "Topor 1"*, No. 88 Civ. 3682, 1989 WL 4030 (S.D.N.Y. January 18, 1989).

> [T]he defendants may have intended to incorporate a charter party. The references, though, do not provide sufficient information which would indicate to the holder of the Bill of Lading the specific charter party sought to be incorporated. Moreover, there is no indication in the general incorporation clauses contained in the bill of lading that the charter party sought to be incorporated .included an arbitration clause. Indeed there is no reference in the Bill of Lading at all to arbitration.

*Associated Metals*, 1991 A.M.C. at 1503. However, the Court agrees with the Defendants that this level of specificity is not required where there is only one vessel owner, one charterer and one charter party. Incorporation clauses have been upheld despite the fact that the clause did not indicate the date or place the charter party was signed, or even the names of the signatories.

> [w]here there is "no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer vis-a-vis the shipowner," an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the making of the charter party.

*Continental U.K. Ltd.*, 658 F.Supp. at 812–13 (citing *State Trading Corp.*, 582 F.Supp. at 1524).

Moreover, the fact that the section of the bill of lading that states "Freight payable as per CHARTER PARTY dated _____" was not completed is of no significance. In *State Trading*, the court stated that

> [T]he blank left in the bill of lading here was not in the incorporation clause, but in a provision regarding payment of freight. The bill of lading clearly states that freight was prepaid, and the provision "freight payable as per charter party" was therefore not applicable. The fact that an irrelevant provision referring to the charter party was left blank is not probative of whether incorporation was intended.

*State Trading*, 582 F.Supp. at 1525.

The same facts are present in this case. The blank referring to the charter party is not in the incorporation clause, but in a section concerning the payment of freight. The bill of lading clearly states "FREIGHT PREPAID". Therefore, the section of the bill of lading referring to the charter party is completely irrelevant.

Additionally, the incorporation clause itself need not refer specifically to arbitration. In *Son Shipping*, the incorporation clause read in part:

> [A]ll terms whatsoever of the said charter except the rate and payment of freight specified therein apply to and

govern the rights of the parties concerned in this shipment.

. . . . .

> These order bills of lading specifically referred to the charter party and, in language so plain that its meaning is unmistakable, incorporated in the bills all the terms "whatsoever" of the charter party.... The very breadth of the language of inclusion ... leaves no fair doubt as to the meaning of the parties.

*Id.* at 688.

The court concluded that the arbitration clause was incorporated into the bill of lading and therefore was enforceable. *Id.* See also *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 980 (4th Cir.1985) (agreement to arbitrate found in general contract incorporated by reference into subcontract without specific reference to arbitration in the incorporation clause). To require the incorporation clause to refer to arbitration specifically would essentially do away with incorporation by reference.

The issue in this case is one of constructive notice. The bill of lading should give the consignee notice that a charter party is incorporated by reference. In this case, the bill of lading, once received by the holder, is sufficient to give notice that a charter party is involved, and although it does not give details, it creates a duty to inquire further as to its terms. However, the Court is concerned that, according to Otto Wolff, no one from Otto Wolff saw the bill of lading until after the cargo was delivered in Puerto Rico in its damaged condition. The Defendants argue that this is not unusual situation and that a consignee typically does not receive the bill of lading until shortly before the goods arrive at the port of destination. Until then, the shipper or a bank holds the bill. While it is technically incorrect for Otto Wolff to assert that had no way of finding out what charter party was involved (a simple inquiry would have been enough to determine that only one charter party existed, that Port Everglades and Sheridan Transportation were the parties, and that an arbitration clause was among its terms), the bill of lading, the document which was to provide

the constructive notice of incorporation of the charter party and its terms, may not have been received by Otto Wolff until the goods arrived and its claim for damages had already arisen. Without the bill of lading to put Otto Wolff on notice and to create a duty of inquiry, there can be no constructive notice of the incorporation of the charter party. However, the Court finds that it need not make a final determination as to the timing of Otto Wolff's receipt of the bill of lading, and therefore the sufficiency of the constructive notice in this case because Otto Wolff cannot be bound by the charter party's arbitration clause.

*Applicability of the Arbitration Clause to Otto Wolff*

■ Otto Wolff argues that the language of the charter party's arbitration clause cannot bind a consignee that was not a party to the charter party because it is expressly limited to disputes between "owner" and "charterer". The Defendants contend that Otto Wolff can be bound by the charter party's arbitration agreement. They contend that the distinction between broad ("any and all disputes" must be arbitrated) and restrictive ("disputes between the Owner and Charterer" must be arbitrated) arbitration clauses is meaningless.

The parties to the charter party are Sheridan Transportation, as agents of the Owners, and Port Everglades, the Charterer. The language of the arbitration clause refers specifically to the resolution of disputes between "Owner" and "Charterer". There is no language indicating that anyone other than the Owner and Charterer have agreed to arbitrate, that a consignee would be subject to the arbitration provision, or that any dispute other than those between the Owner and Charterer would be subject to the clause. In *Alucentro Div. Dell'alusuisse Italia S.P.A. v. The M/V Hafnia*, 785 F.Supp. 155 (M.D.Fla. 1991), the court noted that

> [w]hen the scope of the incorporated arbitration clause is limited to disputes between owners and charterers, a court can compel arbitration only if the parties can be construed as owners or charterers.

On the other hand, however, non-parties may be bound to incorporated arbitration clauses when the language in the clause does not pinpoint disputes between owners and charterers, but instead, more generally requires arbitration of "all disputes arising out of the charter."

*Id.* at 156.

The same point is made by the court in *Continental U.K. Ltd.:*

[P]roving that an arbitration clause is incorporated into a bill of lading to which a nonsignatory is connected is not the only prerequisite for binding that party to submit its disputes to arbitration. The language of the clause must be broad enough to allow nonsignatories' disputes to be brought within its terms.

.     .     .     .     .

[A]n arbitration clause governing "all disputes arising out of this charter" is meant to have a much broader application that one governing disputes between owners and charterers. Thus, where the restrictive "owner/charterer" language is used in the arbitration clause, "it is indeed difficult to bind to that clause one who is not a signatory to the charter party." (citations omitted).

*Id.* at 814.

In support of its assertion that the limiting language of the arbitration clause has no effect on its applicability to Otto Wolff, Sheridan Transportation cites *Office of Cereales of the Republic of Tunisia v. Coastal Carriers Corp.,* 1992 A.M.C. 271, 136 B.R. 642 (D.Md.1991). The court in that case stated that refusing to apply the arbitration clause beyond the stated parties made "little sense". *Id.* at 273, 136 B.R. 642. Defendants also submit that an established course of dealing can bind the plaintiff even though it did not read or sign the charter party because the widespread use of arbitration clauses in charter parties is a matter of common knowledge in the shipping industry, asserting that they are more often the rule rather than the exception. *See* Declaration of Thomas J. Kelly, para. 10. *See also Stedor Enterprises, Inc. v. Armtex, Inc.,* 947 F.2d 727, 733 (4th Cir.1991); *J.J. Ryan & Sons, Inc. v. Rhone*

*Poulenc Textile, S.A.,* 863 F.2d 315 (4th Cir.1988). This "course of dealing" argument has no merit. The parties in *Stedor* and *J.J. Ryan & Sons* freely entered into the commercial contracts at issue and had longstanding business relationships and there was an established course of dealing between them. The Court agrees with Otto Wolff that these cases have no applicability to this case inasmuch as there was no longstanding relationship or established course of dealing between it and Sheridan Transportation. Moreover, while arbitration clauses may be common in the industry, parties are not bound by an arbitration clause merely because it exists. Here, the language of the provision strictly limits arbitration to disputes between owners and charterers. Interpreting the arbitration clause according to the simple principles of contract law, *see Clark,* 924 F.2d at 554; *Son Shipping,* 199 F.2d at 689, Otto Wolff is neither an owner nor a charterer and cannot be construed as either. Therefore is not bound by the arbitration provision.

### CONCLUSION

The Court is of the opinion that because there was no specific reference to arbitration anywhere in the bill of lading and the charter party's arbitration clause itself is clearly limited to disputes between Owners and Charterers, of which the plaintiff is neither, Otto Wolff is not bound by the written arbitration clause found in the charter party and cannot be forced to arbitrate this dispute. For this reason the Court finds that it need not make a final determination as to whether Otto Wolff had constructive notice of the incorporation of the charter party and its terms into the bill of lading. Accordingly, Defendant's Motion to Stay Pending Arbitration is DENIED.

The Clerk is DIRECTED to send a copy of this Order to Counsel for the Plaintiff and counsel for the Defendants.

IT IS SO ORDERED.