**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 97-30796

---

STEEL WAREHOUSE COMPANY, INCORPORATED,

Plaintiff-Appellee,

VERSUS

ABALONE SHIPPING LIMITED OF NICOSAI, ET AL,

Defendants,

ABALONE SHIPPING LIMITED OF NICOSAI,
LONDON STEAM-SHIP OWNERS' MUTUAL
INSURANCE ASSOCIATION, AND
A. BILBROUGHS & CO., LIMITED,

Defendants-Appellants.

---

Appeal from the United States District Court
For the Eastern District of Louisiana

---

MAY 21, 1998

Before POLITZ, Chief Judge, REYNALDO G. GARZA, and DENNIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

This is an appeal from a ruling of the United States District Court for the Eastern District of Louisiana. The district court denied a motion to stay this case pending arbitration made by the Defendants-Appellants, Abalone Shipping of Nicosai ("Abalone"), *et al.* (collectively, "Appellants"). The district court held in favor of the Plaintiff-Appellee, the Steel Warehouse Company ("Steel Warehouse"). The Appellants timely appealed, and the matter now

1

lies before this circuit.

## Background

In May of 1994, Steel Warehouse entered into negotiations with Mathan International Trading, Ltd. ("Mathan"), a British corporation with offices and affiliates in London, Bulgaria, and Kuwait, for the purchase of steel coils. These coils were to be manufactured in Bulgaria. Under the terms of the purchase agreement which resulted from these negotiations, Mathan was to supply the steel coils and ship them to Indiana. In October of 1994, Mathan's Kuwaiti affiliate entered into a charter party agreement with Panoceanica SRL ("Panoceanica"), to charter the M/V VICAL for a voyage from Bulgaria to New Orleans. Panoceanica was acting as an agent for Abalone. Steel Warehouse states that it was unaware of this arrangement.

In November of 1994, the cargo of steel coils was loaded aboard the M/V VICAL in Bulgaria for carriage to New Orleans. This ship was owned by Abalone at the time of this voyage and was under time charter to Panoceanica. The M/V VICAL was under voyage charter to Mathan.[1] A bill of lading was presented by Mathan on November 12, 1994, to Society National Bank for payment.[2]

---

[1]Panoceanica is not a party. Mathan was named a defendant, but never appeared. In July of 1996, Steel Warehouse obtained a default judgment against Mathan, one of Mathan's employees (Christopher Mann), and Mathan's London Agent (Ashley Shipping).

[2]The district court was presented with two bills of lading, and there is a dispute as to which is the proper one. Appellants argue that this dispute need not be addressed by the court because the pertinent language in each bill of lading regarding

The M/V VICAL set sail for New Orleans, encountering rough seas along the way. It arrived at its destination in December of 1994. It discharged its cargo of steel coils into river barges, and these barges carried the coils to Burns Harbor, Indiana, where they were received by Steel Warehouse. Steel Warehouse claims that the steel coils were damaged by rust, and that the coils were rejected by their customers. Steel Warehouse points out that surveyors in New Orleans noted rusty streaks on the hatches of all four cargo holds, and wetness was noted in three of the cargo holds. These facts are indicative of seepage of sea water into the holds.

On September 15, 1995, after an unsuccessful attempt to have this dispute settled by voluntary arbitration in London, Steel Warehouse filed suit in the United States District Court for the Northern District of Indiana. In addition to the defendants named in the instant case, Steel Warehouse filed suit against Steel Warehouse's cargo insurers, as well as Mathan, Ashley Shipping, and Christopher Mann. Other than the Appellants, only Steel Warehouse's cargo insurers made an appearance, and they are no longer before this court. The suit against them was dismissed on the basis of a contractual forum selection clause which required suits against them to be brought only in Britain.

Steel Warehouse's claims against the Appellants are based on the bill of lading and assert rights under the Carriage of Goods by

---

incorporation of the charter party is identical. The district court disagreed, and we will discuss this issue shortly.

Sea Act, 46 U.S.C. §1300, *et seq*. ("COGSA"). Steel Warehouse claims that the coils did not meet contract specifications and were damaged in transit. Steel Warehouse also claims that it had no notice of the arbitration provisions which the Appellants claim are incorporated into the bill of lading.

The first pleading filed by Appellants was their answer to the complaint, and this was filed on December 29, 1995. This answer included, among other things, a demand for a stay pending arbitration in London. For several months following the filing of Appellants' answer, there was little substantive activity, other than the aforementioned dismissal of Steel Warehouse's cargo insurers.

On July 31, 1996, Appellants filed motions in Indiana seeking dismissal and/or a stay of the proceedings. Appellants claimed that the district court did not have personal jurisdiction over them, that the bill of lading incorporated a provision requiring arbitration in London, that there was a failure to state a claim upon which relief could be granted (as to the action against Abalone's insurer), and that summary judgment should be granted as to A. Bilbrough on the grounds that it was not an insurer of Abalone. Prior to the filing of the July 1996 motions, Appellants sent Steel Warehouse one set of interrogatories and one set of document requests. Appellants reserved their right to seek a stay pending arbitration in these interrogatories and requests, and Appellants moved the Indiana court to enter a protective order staying further discovery until the dispositive motions were

4

resolved. The district court did not rule on the Appellants'
motions until March of 1997, when it transferred the case to
Louisiana. The Indiana court only addressed the issue of
jurisdiction in its order.

Appellants re-urged their motion to dismiss and/or stay
pending arbitration before the Eastern District of Louisiana.
Their motion was refused, and the appeal of this refusal now lies
before this panel.

## Standard of Review

This court reviews a district court order refusing to stay an
action pending arbitration under the *de novo* standard of review.
*Mitsui & Co. (USA), Inc. v. M/V MIRA*, 111 F.3d 33, 35 (5th Cir.
1997).

## Analysis

The first issue we must deal with relates to the incorporation
of the terms of the charter party with the bill of lading, and
whether this incorporation, if it exists, binds Steel Warehouse to
the terms of the arbitration clause. In *Mitsui & Co. (USA), Inc.
v. M/V MIRA*, this court rejected the argument that a bill of lading
was a contract of adhesion, and held that the plaintiff in that
suit accepted the properly incorporated terms of the bill of lading
when it filed suit under the bill of lading. *Mitsui*, 111 F.3d at
36. The question turns on whether the charter party and its
arbitration clause were properly incorporated.

Steel Warehouse argues that the key issue here should be notice, actual or constructive, and it states that without notice, it should not be bound by terms of the charter party. *See e.g.: Midland Tar Distillers, Inc. v. M/T LOTOS*, 362 F.Supp. 1311, 1312-13 (S.D.N.Y. 1973); *Otto Wolff Handelsgeshellschaft v. Sheridan Transp.*, 800 F.Supp. 1353, 1355 (E.D.Va. 1992). Abalone argues that incorporation should be the sole issue, and that notice is irrelevant. We believe that in this particular situation, this is a distinction without a difference, and we decline to split this particular doctrinal hair. Given the facts before us in the instant case, proper incorporation yields constructive notice.

Constructive notice can be defined, crudely, as a rule in which "if you should have known something, you'll be held responsible for what you should have known." In this situation, Steel Warehouse was a sophisticated party, and one of its own agents testified that arbitration clauses of the type at issue are standard operating procedure in this line of business. Also, the bill of lading at issue was on a common, internationally recognized form of bill of lading called a "Congen Bill." In other words, if the charter party clause was properly incorporated, given the facts before us, Steel Warehouse should have known what was around the corner, given the totality of the circumstances. Whether one styles this as an issue of constructive notice or incorporation alone, the analysis basically turns on incorporation.

The key point, then, is whether we believe the charter party was properly incorporated. We hold that it was. The relevant part

6

of the bill of lading (which was the same in both of the bills of lading taken before the district court) stated:

> Freight Payable as per CHARTER-PARTY dated 21 OCTOBER 1994 ALL TERMS AND CONDITIONS OF WHICH ARE INCORPORATED IN THIS B/L.

(emphasis in original).

A plain language reading of this clause makes it clear that "THIS B/L [bill of lading]" incorporates the terms of conditions of the charter party, dated October 21, 1994, including, presumably, its (industry standard) arbitration clause. While it would have been preferable for this clause in the bill of lading to have been more specific and detailed, it passes muster, given the facts of this case. Also, precedent allows for quite a bit of leeway in the drafting of such clauses, and does not require a punctilious degree of specificity. *See e.g.: The Silverbrook*, 18 F.2d 144, 145 (E.D.La. 1927); *Lowry & Co. v. S.S. LE MOYNE D'IBERVILLE*, 253 F.Supp 396, 397 (S.D.N.Y. 1966).

The district court also held that the fact that one of the bills of lading was stamped "Freight Prepaid" rendered the incorporation language on that bill of lading to be ambiguous. We disagree. First of all, whether or not the freight was prepaid has nothing to do with the incorporation of the charter party, particularly the arbitration clause. In order to support the district court's decision, we would have to assume that the "Freight Prepaid" stamp somehow adds a clause to the bill of lading which states that "if freight is prepaid, all previously incorporated terms and conditions of the charter party are null,

7

void, and superfluous." This is illogical, and not required by precedent. We therefore reverse the district court on this point as well.

The district court did not rule on several other issues, because of the result it reached on the points already mentioned. We will deal with these issues now. First, Steel Warehouse argues that the incorporation issue should be governed by British law, because British law governs the charter party, and under British law the incorporation of the charter party in the bill of lading was inadequate. The Seventh Circuit rejected this type of analysis in *Duferco Steel, Inc. v. M/V KALISTI*, 121 F.3d 321, 325 (7th Cir. 1997), and we adopt the Seventh Circuit's view on this matter. As the Seventh Circuit stated, such an analysis skips an important initial question, namely, whose law governs the issue of incorporation to begin with? The Seventh Circuit concluded that "there is no reason to suppose that the incorporation issue should be governed by English law" in *Duferco,* and we agree with this method of analysis in the instant case. *Id.* Essentially, Steel Warehouse is attempting to incorporate the arbitration clause into the bill of lading at the beginning of its analysis, only to find that the clause cannot be incorporated. This rather convoluted analysis was rejected in *Duferco*, and we reject it here. *See Id.* American law governs this agreement, for the purposes of incorporation.

Steel Warehouse also contends that the scope of the arbitration clause does not compel arbitration of disputes with

8

third parties.  We disagree.  The relevant language in the charter party is broad.  It states that "all disputes from time to time arising out of this contract shall...be referred to final arbitration in London."  It is not limited merely to "Owners and Charterers," or any such language which requires a more limited application of the clause.  *See e.g.: Otto Wolfe*, 800 F.Supp. at 1357.  The clause applies to Steel Warehouse.

Next, Steel Warehouse argues that the arbitration clause violates Section 3(8) of COGSA, which prohibits a carrier from limiting its liability to less than that provided in the Act.  On this issue, we direct Steel Warehouse to the Supreme Court's holding in *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 115 S.Ct 2322, 2327-29 (1995) and to our holding in *Mitsui.  Mitsui*, 111 F.3d at 36.  Steel Warehouse's substantive rights are not violated in such a way as to allow this case to fall into possible exceptions allowed by *Vimar*, because the Appellants have stipulated that the applicable prescriptive period for this claim is twelve months (as is required by COGSA), rather than nine months (the time listed in the charter party).  The part of the arbitration clause which offends Steel Warehouse will not be enforced, by agreement of the Appellants, so Steel Warehouse's substantive rights are not undermined.

Steel Warehouse also argues that the Appellants waived their right to arbitrate by substantially participating in the litigation process.  There is a well-settled rule in this circuit that waiver of arbitration is not a favored finding, and there is a presumption

against it.  *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496 (5th Cir. 1986).  This is particularly true when the party seeking arbitration has included a demand for arbitration in its answer, and the burden of proof then "falls even more heavily on the party seeking to prove waiver."  *Southwest Indus. Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975). Steel Warehouse has not overcome this presumption against waiver. The Appellants had to participate in the litigation in order to protect themselves if the district court chose not to stay the proceedings.  Appellants' fears were justified, given the district court's ruling in this matter.  Further, it was Steel Warehouse who filed this case to begin with, and the Appellants haven't done much other than defend themselves in this case.  Appellants have not escalated this case, nor have they showered Steel Warehouse with interrogatories and discovery requests.  Given these facts, there is no waiver in this case.

## Conclusion

Based on the foregoing, we REVERSE the decision of the district court in this matter, and order that this case be stayed pending arbitration.

REVERSED.

10